IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDON BALLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 22-115 |
| | ) |
| BHI ENERGY, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Brandon Ballard filed this putative class action in the Court of Common Pleas of Beaver County, Pennsylvania, on December 23, 2021. (Docket No. 1-1 ("Complaint")). In the Complaint, Plaintiff asserts a single claim against his employer, Defendant BHI Energy, Inc.,[1] alleging that BHI violated the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. § 333.101 *et seq.*, and owes unpaid wages for overtime. BHI timely removed the action to this Court on January 20, 2022, on the basis of both diversity and federal question jurisdiction. (Docket No. 1). In its Notice of Removal, BHI asserts that, because the relevant terms and conditions of Plaintiff's employment were governed by a collective-bargaining agreement ("CBA")[2] between BHI and the labor union of which Plaintiff was a member, and because

---

[1] Defendant notes in its brief that Plaintiff improperly names "BHI Energy, Inc." as the defendant in this action, but that no such entity exists. (Docket No. 9 at 1 n.1). Defendant explains that it has filed its Motion to Dismiss as if Plaintiff had named the entity that employed him, "BHI Energy I Specialty Services LLC," as the defendant in this action. (*Id.*). Accordingly, the Court will refer herein to Defendant in this action as "BHI" or "Defendant."

[2] While a court does not generally consider matters outside of the pleadings in ruling on a motion to dismiss, it may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) (internal citations, quotation marks and emphasis omitted). Here, although the Complaint does not refer to the CBA, it is an "undisputedly authentic document" that BHI has attached as an exhibit to its Motion to Dismiss. *Id.* The CBA is also "integral" to Plaintiff's claims of unpaid overtime, since the parties' "dispute unquestionably arises out of [Plaintiff's] employment," which is partly governed by the CBA. *Hughes v. United Parcel Service, Inc.*, 639 F.

resolution of Plaintiff's claim would require interpretation of the CBA, Plaintiff's claim in this action is wholly preempted by Section 301 of the Labor Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 141 *et seq.*, and is therefore subject to federal jurisdiction. (Docket No. 1, ¶¶ 4-10). BHI has now filed an Amended and Substituted Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Docket No. 9 ("Motion to Dismiss")). For the reasons that follow, BHI's Motion to Dismiss is denied.

### I. Background

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts – as alleged in the Complaint, and in the light most favorable to Plaintiff – that are relevant to the motion presently before the Court. Shell Polymers, a subsidiary of Shell Oil Company, is building a 380-acre petrochemical facility in Monaca, Pennsylvania ("Monaca facility"). (Docket No. 1-1, ¶ 5). BHI is a company that employed individuals who are paid an hourly wage to perform work at the Monaca facility ("Hourly Employees"). (*Id.* ¶ 6). Plaintiff is employed by BHI as an Hourly Employee, and he worked at the Monaca facility from July 2019 through February 2020. (*Id.* ¶ 7). Hourly Employees typically worked over 40 hours per workweek. (*Id.* ¶ 8). As a matter of policy, BHI pays Hourly Employees based on the time that transpires between a scheduled start and end time, with a 30-minute meal break deduction. (*Id.* ¶ 9).

Hourly Employees, including Plaintiff, are required to be at their initial job assignment within the Monaca facility at their scheduled start time. (Docket No. 1-1, ¶ 10). Hourly Employees are also required to park in assigned parking lots, which are located at various sites

---

App'x 99, 103 (3d Cir. 2016). Therefore, the Court may consider the CBA in connection with BHI's Motion to Dismiss.

that require travel to the Monaca facility job site by shuttle. (*Id.*). At each parking lot, Hourly Employees must swipe a security badge to enter the shuttle bus loading area, and that time is recorded for security purposes but not for compensation purposes. (*Id.*). Hourly Employees must again swipe a security badge upon arrival at the job site, and that time is also recorded for security purposes but does not trigger the start of paid time. (*Id.*). Thus, Hourly Employees' uncompensated pre-workday activities include waiting at an assigned parking lot for a shuttle bus, riding a bus from the parking lot to the Monaca facility, reporting to an assigned facility/lunch area, obtaining and donning personal protective equipment at that area, and walking or riding in a vehicle onsite from the facility/lunch area to the initial job assignment. (*Id.*). No compensation is paid to Hourly Employees until they arrive at the job assignment location onsite by their scheduled start time. (*Id.*).

At the end of the workday, all Hourly Employees again swipe their security badges in exiting the facility prior to boarding shuttle buses to travel back to the assigned parking lots. (Docket No. 1-1, ¶ 11). At that point, Hourly Employees must still wait for and ride the shuttle buses to their assigned parking lots, although that time is uncompensated. (*Id.*). Depending on the distance between an Hourly Employee's last job assignment and the assigned facility/lunch area, additional uncompensated post-workday activities may include walking from the last job assignment to the assigned facility/lunch area, and doffing and storing personal protective equipment at that area. (*Id.*).

Plaintiff states in the Complaint that the PMWA entitles employees to compensation for all hours worked in a week, and that such compensable time includes all time during which an employee is required by the employer to be on the premises of the employer, regardless of whether the employee is actually performing job-related duties while on the premises. (Docket

No. 1-1, ¶ 22 (citing 43 P.S. § 333.104(a)).  Plaintiff further notes that the PMWA requires that employees receive overtime compensation not less than one and one-half times the employee's regular rate of pay for all hours worked over 40 in a workweek.  (*Id.* ¶ 23, (citing 43 P.S. § 333.104(c)).  Plaintiff asserts that BHI has violated the PMWA by failing to pay Plaintiff and members of the putative class any compensation for required activities before their scheduled start time and after their scheduled end time during weeks in which their paid hours equaled or exceeded 40 hours.  (*Id.* ¶ 24 (citing 43 P.S. § 331.104(c) and 34 Pa. Code § 231.1(b)).

BHI removed the case to this Court (Docket No. 1)[3] and filed its Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) (Docket No. 9), which is presently before the Court.  Also before the Court are BHI's brief in support of its Motion to Dismiss (Docket No. 10), Plaintiff's brief in opposition (Docket No. 19), Defendant's reply (Docket No. 20), and Plaintiff's notice of supplemental authority[4] (Docket No. 21).  BHI argues that Plaintiff's PMWA claim is preempted by LMRA Section 301 and, relatedly, that Plaintiff must exhaust the CBA's grievance process or otherwise arbitrate his claim under the terms of the CBA.  In response, Plaintiff asserts that resolution of his PMWA claim does not require an interpretation of any CBA provision, so the LMRA does not preempt it.  Additionally, and relatedly, Plaintiff argues that the pre- and post-workday

---

[3]   BHI removed this case on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), and federal question jurisdiction pursuant to the LMRA, 28 U.S.C. § 1331; 29 U.S.C. § 185(a).  Although the Court finds herein that the LMRA is not applicable to Plaintiff's PMWA claim, and that the Court therefore does not have federal question jurisdiction over such claim, the Court has diversity jurisdiction over this matter since the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship between Plaintiff (a North Carolina citizen) and BHI (a business corporation being a resident of the State of Massachusetts).  (Docket No. 1).

[4]   Plaintiff submitted for the Court's consideration the opinion by the Honorable William S. Stickman IV in *Beauregard v. Broadway Elec. Serv. Corp.*, Civ. Action No. 2:21-cv-1600, 2022 WL 2293969 (W.D. Pa. June 24, 2022), in which Judge Stickman held that the plaintiff's PMWA claims were not preempted by the LMRA and denied the defendant's motion to dismiss.  In his opposition brief, Plaintiff previously drew the Court's attention to the opinion by the Honorable David S. Cercone in *LaRue v. Great Arrow Builders LLC*, No. 2:19cv932, 2020 WL 5747818 (W.D. Pa. Sept. 25, 2020), in which Judge Cercone also denied the defendant's motion to dismiss, holding that the plaintiff's PMWA claims were not preempted by the LMRA.  Plaintiff suggests that the facts and claims in *Beauregard* and *LaRue* are strikingly similar to the facts and claims in this case, and the Court agrees.

activities at issue here are forms of compensable work under the PMWA, and since he only advances his statutory rights thereunder in his claim, the Section 301 preemption doctrine does not apply and there is nothing to pursue through a grievance procedure and nothing to arbitrate under the CBA.

## II. Standard of Review

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

### III. Legal Analysis

#### A. Relevant Federal and State Law

Both federal and state laws provide workers with various wage protections. While the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. § 201 *et seq.*, establishes "a national floor under which wage protections cannot drop," it does not preclude states from enacting more beneficial wage and hour laws. *Chevalier v. Gen'l Nutrition Ctrs., Inc.*, 220 A.3d 1038, 1055 (Pa. 2019). Thus, the Pennsylvania Minimum Wage Act provides more generous protections to employees in the state. *See id.* Among the PMWA's protections are requirements that "[e]very employer shall pay to each of his or her employees wages for all hours worked," and employees "shall be paid for overtime not less than one and one-half times the employee's regular rate . . . . for hours in excess of forty hours in a workweek." 43 P.S. § 333.104(a), (c). Furthermore, "hours worked" has been defined in Pennsylvania by regulation as:

> . . . time during which an employee is required by the employer to be on the premises of the employer, to be on duty or to be at the prescribed work place, time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work; provided, however, that time allowed for meals shall be excluded unless the employee is required or permitted to work during that time, and provided further, that time spent on the premises of the employer for the convenience of the employee shall be excluded.

34 Pa. Code § 231.1(b).

In order to state a plausible claim under the PMWA for unpaid wages, a plaintiff must sufficiently allege that (1) the plaintiff was an employee, (2) the defendant was the employee's employer, and (3) the defendant failed to pay the plaintiff wages as required by the PMWA. *See* 43 P.S. § 333.104; *Wintjen v. Denny's, Inc.*, No. 2:19-CV-00069, 2021 WL 5370047 (W.D. Pa. Nov. 18, 2021). To allege a claim based on unpaid overtime wages, a plaintiff may allege that he or "'she "typically" worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks.'" *Bansept v. G & M Auto.*, 434 F. Supp. 3d 253, 258-59 (E.D. Pa. 2020) (quoting *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014)).

Section 301(a) of the LMRA, on the other hand, has been construed by the United States Supreme Court "to authorize the federal courts to fashion a body of common law for the enforcement of collective bargaining agreements." *LaRue*, 2020 WL 5747818, at *3 (citing *Textile Workers Union of America v. Lincoln Mills of Ala.*, 353 U.S. 448, 456 (1957)). In fact, Section 301 can completely preempt state law claims in certain instances. Section 301 provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Section 301's preemptive effect over state law claims has evolved over the years. *See Voilas v. Gen. Motors Corp.*, 170 F.3d 367, 373 (3d Cir. 1999). In *Allis-Chalmers Corp. v.*

7

*Lueck*, 471 U.S. 202 (1985), the United States Supreme Court described the limits of Section 301's preemptive impact on state law claims as follows:

> Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 . . . . Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law.

*Id.* at 211-12. Accordingly, the Supreme Court held that Section 301 preemption is limited to instances in which the resolution of a state law claim "is substantially dependent upon analysis of the [collective-bargaining agreement's] terms." *Id.* at 220. The term "substantially dependent" has been interpreted as meaning "inextricably intertwined." *Id.* at 213.

The Supreme Court further explained Section 301 preemption in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), holding "that an application of state law is pre-empted by [Section 301] only if such application requires the interpretation of a collective-bargaining agreement." *Id.* at 413. The Supreme Court noted therein that, "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 409-10. Moreover, as the Supreme Court observed in *Livadas v. Bradshaw*, 512 U.S. 107 (1994), "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.* at 124.

Thus, a state law claim that merely addresses similar facts as those involving a CBA, or that simply entails consultation of a related CBA, does not depend on "interpretation" of that CBA, and is therefore not preempted by Section 301.[5]

### B. LMRA Section 301 Preemption and Plaintiff's PMWA Claim

As explained, *supra*, the disputed issue underlying Plaintiff's Complaint is whether time allegedly spent engaging in certain required work-related activities, before the scheduled start time and after the scheduled end time of each workday, is compensable under the PMWA. Specifically, Plaintiff alleges that such compensable activities include waiting at an assigned parking lot for a shuttle bus, riding the shuttle bus from that parking lot to the Monaca facility, reporting to an assigned facility/lunch area, obtaining and donning personal protective equipment at that area, walking or riding in a vehicle from that facility/lunch area to the initial job assignment, waiting for and riding a shuttle bus back to an assigned parking lot at the end of the workday, and walking from the last job assignment to the assigned facility/lunch area and doffing and storing personal protective equipment at that area at the end of the workday.

BHI argues that Plaintiff's claim alleging unpaid overtime related to such activities should be dismissed because such time is covered by the CBA and is therefore preempted by LMRA Section 301. As explained above, however, in order for Plaintiff's PMWA claim to be preempted by Section 301, the determination of whether the activities at issue constitute compensable work (and thus qualify for overtime compensation) under the PMWA would have to depend on *interpretation* of the CBA. Therefore, to support its contention that the CBA must

---

[5] The LMRA also precludes certain federal law claims, such as FLSA claims, that require interpretation of a CBA. *See Bell v. SEPTA*, 733 F.3d 490, 494 (3d Cir. 2013). Because there is "significant overlap between LMRA preemption (*e.g.,* LMRA preempting a PMWA claim) and LMRA preclusion (*e.g.,* LMRA precluding a FLSA claim), courts often rely interchangeably on precedent involving either doctrine." *Beauregard*, 2022 WL 2293969, at *6 n.3 (citing *LaRue*, 2020 WL 5747818, at *9-10; *Oddo v. Bimbo Bakeries USA, Inc.*, Civ. No. 2:16-cv-04267, 2017 WL 2172440, at *8-9 (D.N.J. May 17, 2017); *Phila. Metal Trades Council v. Konnerud Consulting W.*, Civ. Action No. 15-5621, 2016 WL 1086709, at *4 (E.D. Pa. Mar. 21, 2016)).

be interpreted in order to resolve Plaintiff's PMWA claim, BHI cites to certain provisions of the CBA that govern the extent of shifts and when employees are eligible to receive overtime compensation.  (Docket No. 20-1, ¶¶ 34, 36, 37).  BHI argues that these provisions address "when Plaintiff's shifts began, when they ended, and whether any portion of his shift would consist of an unpaid break," and when overtime compensation is provided.  (Docket No. 10 at 6).  Upon review of those CBA provisions, however, the Court notes that, although they address shifts and overtime payment, it is not apparent that such provisions require "interpretation" by the Court to determine whether activities involving the shuttle buses are compensable under the PMWA, nor does BHI explain how or why such provisions must be interpreted in order for the Court to make such determination.  Furthermore, while resolution of Plaintiff's claim here will depend on applying certain facts in conjunction with the PMWA's "hours worked" provision, discussed above, "consulting" the CBA provisions to consider whether the activities at issue are clearly excluded from the Hourly Employees' workday does not equate with "interpreting" the CBA to determine whether such activities constitute compensable time under the PMWA.  *See Beauregard*, 2022 WL 2293969, at *6; *LaRue*, 2020 WL 5747818, at *16 ("'[T]he mere fact that we must look at the CBA in order to determine that it is silent on any issue relevant to [a plaintiff's] state claims does not mean that we have "interpreted" the CBA.'" (quoting *Kline v. Security Guards, Inc.*, 386 F.3d 246, 256 (3d Cir. 2004))).

      Similarly, Plaintiff claims that he is entitled to compensation under the PMWA for time spent obtaining, donning, doffing, and storing personal protective equipment, which are also required work-related activities.  Notably, BHI does not attempt to link this aspect of Plaintiff's claim directly to any specific provision of the CBA.  As Plaintiff points out, whether such activities are compensable work under the PMWA must be determined by applying the facts of

the case to the PMWA's "hours worked" regulation, but BHI has shown no reason – nor is the Court aware of any reason – why such determination would require the interpretation of a provision of the CBA.

With regard to Plaintiff's allegation that BHI owes him compensation for time spent walking from the last job assignment to the assigned facility/lunch area and doffing and storing personal protective equipment in that area, again, BHI cites to the CBA provisions that address when shifts began and ended, whether any portion of shifts would consist of unpaid breaks, and payment of overtime compensation.  (Docket No. 20-1, ¶¶ 34, 36, 37).  However, BHI fails to indicate why the Court would need to interpret those particular CBA paragraphs in order to determine the compensability of time spent engaging in such activities under the PMWA, nor is the Court aware of any reason why an interpretation of those paragraphs would be necessary in this regard.

Thus, the resolution of Plaintiff's claim under the PMWA will involve certain factual determinations as to the uncompensated pre- and post-workday activities in which Plaintiff was required to engage, and whether those activities constitute compensable work under the PMWA. The determination of whether such activities are compensable work under the PMWA "turns on issues of fact under the PMWA's regulations defining compensable time."  *LaRue*, 2020 WL 5747818, at *12.  Upon examination of the CBA paragraphs identified by BHI as supposedly requiring interpretation in order to determine whether those activities are compensable work under the PMWA, as well as after consideration of the CBA as a whole, the Court finds no relevant provisions that require interpretation by the Court in order to make such determination as BHI contends.

BHI makes two additional arguments related to LMRA Section 301 preemption, neither of which have merit. First, BHI asserts that Plaintiff cannot file his PMWA claim without exhausting the CBA's grievance procedures. Although BHI does not cite to a specific CBA provision that pertains to such procedure, Plaintiff points out a provision of the CBA that lists a series of steps and provides, "Where a disagreement exists between the Union and the Employer concerning the meaning, interpretation or operation of this Agreement . . . it shall be resolved in accordance with the grievance procedure outlined in this Agreement." (Docket No. 20-1, ¶ 49).

However, the cases cited by BHI in support of its exhaustion argument concern claims involving Section 301 in which employees explicitly allege that a CBA had been breached. *See, e.g., Prof'l Emergency Med. Servs. Ass'n of N.J. v. Monmouth Ocean Hosp. Servs. Corp.*, 680 F. App'x 100, 104-05 (3d Cir. 2017); *Koshatka v. Phila. Newspapers, Inc.*, 762 F.2d 329, 332 (3d Cir. 1985); *Pickett v. Ocean-Monmouth Legal Servs., Inc.*, Civ. No. 11-6980, 2012 WL 254132, at *3 (D.N.J. Jan. 27, 2012); *Carpenter v. Wawa*, Civ. Action No. 09-2768, 2009 WL 4756258, at *3 (E.D. Pa. Dec. 3, 2009). Here, in contrast, Plaintiff is not alleging a Section 301 claim and is not relying on an alleged breach of the CBA, but is instead bringing a claim under the PMWA alleging a violation of his statutory rights. Further, as explained, *supra*, the disputed issue in this case does not involve an interpretation of the CBA that has any impact on Plaintiff's PMWA claim. *See, e.g., Bell v. SEPTA*, 733 F.3d 490, 494-95 (3d Cir. 2013) (holding that plaintiffs did not have to exhaust a CBA grievance provision before filing their FLSA claim because "there exists no dispute over the interpretation or application of any of the provisions of the CBAs that has any impact on the . . . FLSA claim"). Therefore, the Court finds that Plaintiff is not required to exhaust the CBA's grievance procedure before bringing his PMWA claim in court.

Second, BHI argues that Plaintiff's PMWA claim is subject to mandatory arbitration under the CBA. However, similar to its exhaustion argument, BHI's arbitration argument relies on the assumption that Plaintiff's PMWA claim depends upon the Court needing to interpret the CBA, which the Court has found to be false, *supra*. Further, although the CBA may address the subject of Plaintiff's compensation and job duties, as BHI points out, that fact alone does not dictate that Plaintiff's claim is subject to mandatory arbitration under the CBA. *See, e.g., Jones v. Does 1-10*, 857 F.3d 508, 512 (3d Cir. 2017) (holding employees were not required to arbitrate their FLSA claim because it did not depend upon a disputed interpretation of a CBA). In fact, the CBA itself provides, "The arbitrator shall only have jurisdiction and authority to interpret, apply or determine compliance with the provisions of this Agreement and shall not have jurisdiction or authority to add to or detract from or alter in any way this Agreement." (Docket No. 20-1 at 13). As the Court has already determined that Plaintiff is not alleging a violation of the CBA, nor must the Court interpret the CBA in considering Plaintiff's claim, the Court finds, accordingly, that Plaintiff is not bound by the CBA's arbitration provision in resolving his claim and may pursue his PMWA claim in court.

In conclusion, the Court finds that Plaintiff has adequately pled a violation of his statutory rights under the PMWA in that he has alleged that he is an employee, that BHI is his employer, and that he typically worked a forty-hour week but engaged in activities pre- or post-workday, which were outside the scope of compensation under the CBA, but which qualified as compensable work, for which he was not paid. Additionally, the Court finds that Plaintiff's PMWA claim is not preempted by LMRA Section 301, nor must Plaintiff exhaust the CBA's grievance procedures before filing his PMWA claim, nor is Plaintiff bound by the CBA's arbitration provision in resolving his claim. Plaintiff does not claim any right to be compensated

for pre- or post-workday activities under the terms of the CBA, but, rather, the CBA may provide evidence of a compensation policy that clearly excludes from his compensable workday the time spent engaging in such activities. Instead, Plaintiff's sole claim is that he, and other similarly situated Hourly Employees, are entitled to compensation for activities involving parking shuttles, travel onsite, and donning and doffing personal protective equipment as a matter of statutory right – independent of the CBA – under the PMWA.

Therefore, the Court finds that Plaintiff has stated a plausible claim upon which relief can be granted against BHI under the PMWA, and BHI's Motion to Dismiss Plaintiff's Complaint is denied.

## IV. Conclusion

For the reasons stated, BHI's Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.

An appropriate Order follows.


Dated:  September 26, 2022                    *s/ W. Scott Hardy*
                                              W. Scott Hardy
                                              United States District Judge

cc/ecf:  All counsel of record